**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH M. MORRISON and** | ) | |
| **ALLISON B. MORRISON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2843-STA-tmp** |
| | ) | |
| **REGIONS FINANCIAL** | ) | |
| **CORPORATION. and BLUE CROSS** | ) | |
| **AND BLUE SHIELD OF ALABAMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD AND GRANTING DEFENDANTS' CROSS-MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Before the Court are Plaintiffs Joseph M. Morrison and Allison B. Morrison's Motion for

Judgment on the Administrative Record (D.E. # 62) filed on September 26, 2012, and Defendants

Regions Financial Corporation ("Regions") and Blue Cross and Blue Shield of Alabama ("BCBS")'s

Cross-Motion for Judgment on the Administrative Record (D.E. # 70) filed on December 21, 2012.

After a number of extensions, the parties completed briefing on their Motions on February 8, 2013.

On March 14, 2013, the Court directed Defendants to file plan documents, which were relevant to

the Court's determination of what standard of review to apply in this case. Defendants filed the plan

documents on April 4, 2013. Therefore, the parties' Motions are now ripe for disposition. For the

reasons set forth below, Plaintiffs' Motion for Judgment on the Administrative Pleadings is

**DENIED**, and Defendants' Motion for Judgment on the Administrative Pleadings is **GRANTED**.

# FINDINGS OF FACT

Plaintiffs have filed suit pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover health insurance benefits, which they allege Defendants wrongfully denied.[1]  "Traditional summary judgment concepts are inapposite to the adjudication of an ERISA action for benefits, brought under 29 U.S.C. § 1132(a)(1)(B), because the district court is limited to the evidence before the plan administrator at the time of its decision, and therefore, the court does not adjudicate an ERISA action as it would other federal civil litigation."[2]  Instead, the district court's task is to conduct a review under the appropriate standard "based solely upon the administrative record, and render findings of fact and conclusions of law accordingly."[3]  As more fully explained below, the Court will apply the arbitrary and capricious standard of review to Defendants' decision to deny benefits in this case.  Based on the administrative record, the Court finds the facts as follows:

At all relevant times, Plaintiff Joseph M. Morrison was a "participant" in the Regions Financial Corporation Advantage Health Plan ("the plan"), an "employee welfare benefit plan" as

---

[1] The relevant section reads, "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B).

[2] *Buchanan v. Aetna Life Ins. Co.*, 179 F. App'x 304, 306 (6th Cir. 2006).

[3] *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring)). Furthermore, "[t]he district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator."  *Wilkins*, 150 F.3d at 619.

that term is defined in 29 U.S.C. § 1002. Defendant Regions Financial Corporation ("Regions") funded the plan, and Blue Cross and Blue Shield of Alabama ("BCBS") administered the plan. Plaintiff Allison B. Morrison, Joseph Morrison's daughter, was a "beneficiary" of the plan at all relevant times.

The plan provides hospital and medical benefits and is administered under an administrative services agreement between BCBS and Regions. As the plan sponsor and administrator, Regions is responsible for discharging all obligations that ERISA and its regulations impose upon plan sponsors and plan administrators, such as delivering summary plan descriptions, annual reports, and COBRA notices when required by law. Regions has delegated to BCBS the discretionary responsibility and authority to determine claims under the plan, to construe, interpret, and administer the plan, and to perform every other act necessary and appropriate in connection with the provision of benefits and/or administrative services under the plan. Under the terms of the plan, whenever BCBS makes reasonable determinations that are neither arbitrary nor capricious in the administration of the plan, those determinations will be final and binding on the beneficiary, subject only to a right of review under the plan (including, when applicable, arbitration) and thereafter to judicial review to determine whether Blue Cross's determination was arbitrary or capricious (in the case of claims covered by Section 502(a) of ERISA).

The plan provides benefits for mental health and substance abuse, including treatment for anorexia nervosa, at inpatient general hospitals and psychiatric specialty hospitals. The plan defines the term "inpatient" as a "registered bed patient in a hospital" and "hospital" as "[a]ny institution that is classified by [BCBS] as a 'general' hospital using, as [BCBS] deem[s] applicable, generally available sources of information." The plan defines the term "psychiatric specialty hospital" to mean

"an institution that is classified as a psychiatric specialty facility by such relevant credentialing organizations as [BCBS] or any Blue Cross and/or Blue Shield plan (or its affiliates) determines." The plan goes on to specifically exclude from the definition of a "psychiatric specialty hospital" any "substance abuse facility."

The plan pays 90% of mental health benefits, subject to the calendar year deductible, for services and supplies at inpatient general hospitals and psychiatric specialty hospitals, whether in-network or out-of-network. The plan defines an "in-network provider" as a provider who "furnish[es] a service or supply that is specified as an in-network benefit under the terms of the contract between the provider and the Blue Cross and/or Blue Shield plan (or its affiliates)." The plan adds that "a provider will be considered an in-network provider only if the local Blue Cross and/or Blue Shield plan designates the provider as a Blue Card PPO provider for the service or supply being furnished."[4] The plan definition for an "in-network provider" goes on to explain that "[t]his means that if you receive a service or supply from a provider that has a contractual relationship with a Blue Cross and/or Blue Shield plan but is not designated by the local Blue Cross and/or Blue Shield plan as a BlueCard PPO provider, we will pay at the out-of-network level of benefits." The plan defines an "out-of-network provider" as "a provider who is not an in-network provider."

Importantly, the plan excludes coverage for any "services provided by psychiatric specialty hospitals that do not participate with nor are considered members of any Blue Cross and/or Blue

---

[4] Elsewhere in defining an "allowed amount," the plan states that "[e]ach local Blue Cross and/or Blue Shield plan determines (1) which of the providers in its service area will be considered in-network providers, (2), which subset of those providers will be considered BlueCard PPO providers, and (3), the services or supplies that are covered under the contract between the local Blue Cross and/or Blue Shield plan and the provider."

4

Shield plan." The plan does not define "participate with" a Blue Cross or Blue Shield plan or the term "participating" provider. The plan further requires preadmission certification for all inpatient hospital admissions. "Preadmission certification" is defined as "the procedures used to determine whether a member requires treatment as a hospital inpatient prior to a member's admission, or within 48 hours or the next business day after the admission in the case of an emergency admission, based upon medically recognized criteria." The plan further states that "[p]readmission certification does not mean that your admission is covered. It only means that we have approved the medical necessity of the admission." The plan places the responsibility for obtaining preadmission certification on the participant or the provider. Otherwise, the plan will not provide benefits for inpatient stays except in cases of an emergency.

On September 19, 2008, at 9:15 a.m., Mr. Morrison called BCBS and spoke with a customer service representative about benefits for his daughter's treatment for depression and an eating disorder at a facility in Arizona. During the call, Mr. Morrison was advised that "preadmission certification would be required on any inpatient stay" and that the hospital would need to obtain approval for the treatment.

At 10:01 a.m., Helen, a representative of Remuda Ranch in Wickenburg, Arizona, called BCBS and spoke with a different customer service representative. During the call, Helen asked about out-of-network inpatient mental health benefits. BCBS advised that preadmission certification was required for an inpatient admission and that no benefits were available without preadmission certification. BCBS also stated that no benefits were available for residential treatment.

At 2:03 p.m., Norma Schuler ("Schuler") with Remuda Ranch spoke with a third BCBS customer service representative and actually attempted to precertify Ms. Morrison's admission.

Schuler stated that Remuda Ranch was not a PPO with the local Blue Cross or Blue Shield plan. After taking additional information from Schuler, the customer service representative informed Schuler that she was unable to certify the admission at her level. The representative stated that Schuler would need to speak with Nurse Betty Grier and then transferred Schuler to Nurse Grier. At 2:37 p.m., Schuler left a voicemail message for Nurse Grier, in which she gave information about Ms. Morrison, stated that Ms. Morrison would be arriving at Remuda Ranch later that day, and requested that Nurse Grier return her call. Approximately two minutes later, at 2:39 p.m., Nurse Grier returned Schuler's call and left a message stating that Ms. Morrison did not have benefits for the Remuda Ranch facility. On September 19, 2008, at 6:55 p.m., Ms. Morrison was admitted to Remuda Ranch's inpatient facility and received treatment there until her discharge in November 2008.

On December 2, 2008, Helen from Remuda Ranch spoke with a BCBS customer service representative about coverage for Ms. Morrison's treatment. BCBS stated that preadmission certification was required for inpatient coverage and that no benefits were available for residential treatment. On December 3, 2008, Mr. Morrison addressed a letter to BCBS requesting reconsideration of the denial of benefits for his daughter's inpatient treatment. Mr. Morrison asserted in his letter that Remuda Ranch was a psychiatric specialty hospital and stressed his daughter's need for immediate treatment at the time of her admission.

On December 19, 2008, BCBS issued a processed claims report, indicating that no benefits were available for Ms. Morrison's treatment between November 1, 2008, and November 8, 2008, because Plaintiffs had used "a nonparticipating, out-of-network provider." On December 23, 2008, BCBS issued a similar processed claims report, stating that no benefits were available for Ms.

Morrison's treatment between September 19, 2009, and October 31, 2008, also because Plaintiffs had used "a nonparticipating, out-of network provider."[5]

On February 4, 2009, Mr. Morrison spoke with BCBS about the claims. BCBS informed Mr. Morrison that both claims were denied because neither Plaintiffs nor Remuda Ranch obtained preadmission certification. Mr. Morrison was advised that his next step would be to appeal the denial of benefits. On March 9, 2009, Kevin Wandler, M.D., the executive medial director of Remuda Ranch, made a written appeal of the denial of Ms. Morrison's benefits. Dr. Wandler attached to his letter the following documents: an assignment of insurance benefits signed by both Plaintiffs; three letters from treating professionals recommending inpatient treatment for Ms. Morrison at the time of her admission to Remuda Ranch; a copy of Remuda Ranch's Level 1 psychiatric acute behavioral health facility license issued by the state of Arizona; a copy of the Arizona Administrative Code section defining "Level 1 psychiatric acute hospital;" and the American Psychiatric Association's level of care criteria for patients with eating disorders.

Dr. Wandler first stated that neither Plaintiffs nor Remuda Ranch had received a written explanation of BCBS's denial of benefits. Dr. Wandler acknowledged that on September 19, 2008, BCBS informed Remuda Ranch that no benefits were available for treatment at Remuda Ranch because BCBS considered Remuda Ranch to be a residential treatment facility. Dr. Wandler stated that there was "a misunderstanding regarding the acuity of the patient and the level of care at which she was treated." Dr. Wandler's appeal also refers to the processed claims reports addressed by

_____

[5] The record also shows that Ms. Morrison was later admitted to Remuda Ranch's separate residential treatment facility some time in November 2008. Plaintiffs have not sought benefits for that stay, only for the inpatient treatment Ms. Morrison received at Remuda Ranch's inpatient facility.

BCBS to Plaintiffs in December 2008, indicating that BCBS denied the claims because Remuda Ranch was a nonparticipating, out-of-network provider. Dr. Wandler stated that during a call on September 18, 2008,[6] BCBS quoted benefits for inpatient treatment at a nonparticipating, out-of-network provider. According to Dr. Wandler, Remuda Ranch was a "nonparticipating, out-of-network provider." Dr. Wandler then explained in some detail the level of care provided at Remuda Ranch and the medical need for the inpatient treatment Remuda Ranch provided for Ms. Morrison.

The Arizona Administrative Code section provided with Dr. Wandler's appeal defines a "Level I psychiatric acute hospital" to include any facility that: (1) was licensed as a "Level I psychiatric acute care behavioral health facility before the effective date of this chapter" and which does not receive Medicaid funds; (2) has continuous onsite or on-call availability of a psychiatrist; and (3) provides continuous treatment to an individual who is experiencing a behavioral health issue that causes the individual to be a danger to self, others, or gravely disabled; or that causes the individual to suffer severe and abnormal mental, emotional, or physical harm that significantly impairs judgment, reason, behavior, or the capacity to recognize reality.

On April 2, 2009, Blue Cross Health Management issued a written response to Dr. Wandler's appeal. The letter succinctly stated:

> Our Clinical Review Staff received a certification request for this patient's admission to Remuda Ranch on September 19, 2008. Based on the medical information we received, this is admission is for the following:
>
> . [sic] Because this treatment/procedure is not covered by your contract, we are unable to certify this admission.

The Court finds the letter to be irregular in that it contains a typographical error. Specifically, the

---

[6] The administrative record shows that the call actually took place on September 19, 2008.

letter states "this admission is for the following:" which is followed on the next line of the letter by a period. It appears to the Court that the drafter of the letter omitted whatever information should have followed the colon. Blue Cross Health Management copied Remuda Ranch on the letter.

On April 8, 2009, Ginger Carver ("Carver") from Remuda Ranch called BCBS and was told that BCBS denied coverage because Remuda Ranch was a residential treatment facility. Thereafter, Mr. Morrison completed a BCBS appeals form and designated Carver as his authorized representative. On June 2, 2009, Carver submitted a voluntary appeal on behalf of Plaintiffs. BCBS received the appeal and its supporting documentation via certified mail on June 9, 2009. When Carver called BCBS on August 11, 2009, to check on the status of the appeal, BCBS informed Carver that it had no record of her appeal but advised her to fax the appeal documents to BCBS. On August 17, 2009, Blue Cross Health Management responded to the appeal, stating "there are no appeal options for Health Management regarding" the determination that there were no benefits available.

After Carver submitted the voluntary appeal, Mr. Morrison exchanged a series of emails with Stephanie Hays ("Hays"), Regions' health and welfare benefits manager, about BCBS's denial of benefits. On June 4, 2009, Mr. Morrison emailed Hays the documents Carver had submitted as part of the voluntary appeal. The following day Hays responded that she had received information from BCBS and that BCBS had properly denied the claim because the plan did not cover residential treatment. Hays further stated that Remuda Ranch did not attempt preadmission certification and had sought certification for the first time in April 2009.

On June 8, 2009, Mr. Morrison responded to Hays's email with a series of additional issues. According to Mr. Morrison, Remuda Ranch informed him that it did not communicate with BCBS

at all in April 2009.  The April 2, 2009 letter from Blue Cross Health Management was addressed to Mr. Morrison and actually stated that Remuda Ranch attempted certification on September 19, 2008.  As a result, Mr. Morrison questioned Hays's statement that Remuda Ranch had only attempted certification in April 2009.  BCBS's April 2, 2009 letter also stated that Blue Cross Health Management had informed Remuda Ranch of its denial of benefits; however, Remuda Ranch had no record of such correspondence.  Mr. Morrison also brought up the apparent typographical error in the April 2, 2009 letter.  Mr. Morrison pointed out to Hays that Remuda Ranch has two separate facilities in different cities, one an inpatient psychiatric facility and the other a residential treatment facility.  Mr. Morrison requested clarification then about why BCBS was denying benefits for inpatient psychiatric services provided at the inpatient facility.  Mr. Morrison wrote, "I am not questioning a claim for her stay at [the separate residential treatment facility] since it is a residential program.  We are only appealing her stay at the inpatient facility."

On June 12, 2009, Hays responded by email to these issues and provided Mr. Morrison with additional information she received from BCBS.  According to BCBS, Ms. Morrison was admitted to Remuda Ranch for residential treatment.  Remuda Ranch was informed that preadmission certification was required to receive benefits, and the facility never completed the certification process.  BCBS indicated that a representative from Remuda Ranch had initiated a certification request and that the caller was transferred to voicemail, presumably Nurse Grier's.  BCBS stated that there was no indication of whether the caller left a message or simply hung up.[7]

On December 15, 2009, Plaintiffs exercised their right to appeal the denial of benefits to the

---

[7] As previously mentioned, the record shows that the caller was Schuler, that she left Nurse Grier a voicemail message, and that Nurse Grier returned the call two minutes later stating that Ms. Morrison did not have benefits for the Remuda Ranch facility.

Regions Benefits Administrative Committee. Mr. Morrison drafted the appeal letter, setting forth many of the facts already discussed here: the denial of benefits for treatment at Remuda Ranch; the verbal denial of preadmission certification; Dr. Wandler's March 2009 appeal on behalf of Plaintiffs; Remuda Ranch's level 1 psychiatric acute behavioral health facility license from the state of Arizona; Remuda Ranch's level 2 behavioral health residential facility license from the state of Arizona; BCBS's brief April 2009 letter denying certification of the admission; Carver's June 2009 voluntary appeal on behalf of Plaintiffs; and Blue Cross Health Management's denial of the appeal in August 2009. Mr. Morrison asserted that BCBS's denial of benefits was arbitrary and capricious. Plaintiffs stressed that Ms. Morrison received treatment at the inpatient facility and that their appeal concerned "the denial of benefits for covered services at the inpatient facility, not the separately licensed residential facility."

In a letter dated January 29, 2010, Christopher Glaub ("Glaub"), Regions Vice President for Corporate Benefits, informed Mr. Morrison that the appeal was denied. Glaub stated that BCBS denied preadmission certification because Remuda Ranch "is licensed as a residential treatment center and not as a hospital." Glaub determined that the licenses submitted by Mr. Morrison did not show that Remuda Ranch "is licensed as a hospital." Glaub added that based on his personal research about Remuda, which was "not provided to the Committee," Remuda's CEO "proudly states that Remuda is not a hospital." The Committee concluded that if Remuda Ranch could itemize its counseling and non-counseling charges, BCBS would consider whether benefits were available for the counseling charges.

## STANDARD OF REVIEW

"A district court reviews a denial of benefits claim under [ERISA] § 502(a)(1)(B) under a

*de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[8]   Where the plan administrator or fiduciary is granted such discretion, the district court reviews the decision to deny benefits under the arbitrary and capricious standard.[9]   Under this deferential standard of review, the Court analyzes the decision to deny benefits to ensure that the denial is "the result of a deliberate, principled reasoning process . . . supported by substantial evidence."[10]   For example, the Court will grant "plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms."[11]   "Even if the Court would not have come to the same conclusion as the Plan Administrator, as long as there is a reasonable basis for the decision, it must be upheld."[12] At the same time, the arbitrary and capricious standard does not reduce the district courts to mere "rubber stamps for any plan administrator's decision."[13]   The Court has a duty even under the arbitrary and capricious standard of review to consider "the quality and quantity of the

---

[8] *Brigolin v. Blue Cross Blue Shield of Mich.*, No. 11-1525, 2013 WL 781639, at *7 (6th Cir. Mar. 4, 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (internal quotation marks omitted)).

[9] *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561 (6th Cir. 2007).

[10] *Senzarin v. Abbott Severance Pay Plan for Emps. of KOS Pharm.*, 361 F. App'x 636, 640 (6th Cir. 2010) (quoting *Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom. Met. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

[11] *Moos v. Square D Co.,* 72 F.3d 39, 42 (6th Cir. 1995).

[12] *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005); *see also Shappie v. Minster Mach. Co. Restated Non-Bargaining Emps.' Ret. Plan*, 492 F. App'x 543, 551-52 (6th Cir. 2012); *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) ("Under this deferential standard, when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious.").

[13] *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 333 (6th Cir. 2009).

evidence and the opinions on both sides of the issues."[14]  The Court will not affirm a determination "when there is an absence of reasoning in the record to support it."[15]

The parties disagree over the proper standard of review in this case.  According to Plaintiffs, the Court should review BCBS's benefits determination under the arbitrary and capricious standard and review Regions's subsequent conclusion on appeal *de novo*.  Plaintiffs argue that the plan did not confer on Regions any authority to determine benefits.  Plaintiffs further argue that Regions has a conflict of interest because Regions funded the plan and made a coverage determination.  Plaintiffs contend that the Court should weigh Regions's conflict of interest as part of the Court's *de novo* review of Regions's decision to deny coverage.  For their part Defendants respond that the correct standard of review is the arbitrary and capricious standard because "Blue Cross has discretionary authority to review and interpret the Plan at issue here."[16]  Other than to assert that Plaintiffs have failed to show how Regions had a "serious conflict of interest," Defendants have not addressed what standard of review should apply to Regions's decision to deny benefits on appeal.

The Court holds that the arbitrary and capricious standard applies both to the decision of BCBS to deny benefits as well as the decision of Regions on appeal.  The Sixth Circuit has held that if an ERISA plan grants the plan administrator discretionary authority and the plan administrator "properly designates another fiduciary" to exercise that discretion, then the arbitrary and capricious

---

[14] *Id.* (quotation and ellipsis omitted).

[15] *Id.* at 334.

[16] Defs.' Mem. in Support Cross-Mot. for J. on the Admin. R. 12 (D.E. # 71).

standard applies to the decisions of both the plan administrator and the designated third party.[17]  Here

the Administrative Services Agreement ("the agreement") states that Regions "remains responsible

of all obligations of Plan administrators and sponsors under ERISA, including the exercise of

discretionary, fiduciary, [sic] authority to manage and administer the plan except to the extent

delegated to the Claims Administrator hereunder."[18]  Furthermore, the agreement provides that "[t]o

the extent not delegated to the Claims Administrator in this Agreement or pursuant to the terms of

the Plan, the Employer retains the discretionary fiduciary authority to manage and administer the

Plan."[19]  With respect to Regions's delegation of this authority, the plan states

> The employer hereby delegates to the Claims Administrator the discretionary
> responsibility and authority to process and adjudicate Claims under the Plan, to
> construe, interpret, and administer the plan, and to perform every other act necessary
> or appropriate in connection with the Claims Administrator's provision of
> administrative services hereunder . . .  subject only to applicable rights of review
> under the Plan and thereafter to judicial review to determine whether the Claims
> Administrator's determination was arbitrary and capricious.[20]

Based on this language, the Court holds that the plan grants Regions discretionary authority to

manage and administer the plan and delegates discretionary authority to BCBS to administer the

plan.  Therefore, the arbitrary and capricious standard applies to BCBS's decision to deny benefits

---

[17] *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 742 (6th Cir.
2005) (citing *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1283-84 (9th Cir.
1990)).

[18] Admin. R. D-0000817 (D.E. # 80).  On March 14, 2013, the Court entered an order
directing Defendants to file the complete plan documents to aid the Court in its determination of
the proper standard of review.  The administrative record only included a copy of the benefits
"booklet" in which Regions delegated "the discretionary responsibility and authority to determine
claims under the plan" to BCBS.

[19] Admin. R. D-0000824 (D.E. # 80).

[20] Admin. R. D-0000823 (D.E. # 80).

and Regions's denial of benefits on appeal.

The Sixth Circuit's decision in *Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355 (6th Cir. 2009) does not alter the Court's analysis. Plaintiffs cite the case for the proposition that the *de novo* standard of review applies "when the benefits decision 'is made by a body other than the one authorized by the procedures set forth in a benefits plan.'"[21] Plaintiffs assert that "Regions is not clothed with discretionary authority under the terms of the Plan."[22] According to Plaintiffs, Regions made a benefits determination in this case, even though Regions had no discretionary authority to do so. As a result, Plaintiffs argue that Regions's decision is subject to *de novo* review.

The Court finds that *Majestic Star Casino* is factually distinguishable. The plan at issue in that case granted the employer-plan administrator "the sole discretionary authority to determine eligibility for Plan benefits."[23] The plan specifically denied the third-party "contract administrator" any of the discretionary authority given to the plan administrator.[24] Based on the administrative record in that case, the district court found that the third-party contract administrator actually made the decision to deny benefits and that the plan administrator "simply adopted its decision without engaging in any independent fact-finding."[25] The Sixth Circuit held that under the circumstances,

---

[21] Pl.'s Mem. in Support Mot. for J. on Admin. Record 14-15.

[22] Pl.'s Resp. in Opp'n to Defs.' Cross-Mot. for J. on Admin. Record 4 (D.E. # 77).

[23] *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 362 (6th Cir. 2009).

[24] *Id.*

[25] *Id.* at 366.

the district court correctly applied the *de novo* standard of review to the denial of benefits.[26] By contrast, the plan at issue in the case at bar clearly grants discretionary authority to BCBS and Regions.[27] Therefore, the Court finds Plaintiff's reliance on *Majestic Star Casino* to be unpersuasive. Plaintiff makes the additional argument that the Court should review Regions's decision on appeal in light of Regions's apparent conflict of interest. The Sixth Circuit has held that an inherent conflict of interest arises when "the same entity determines eligibility for benefits and also pays those benefits out of its own pocket."[28] The conflict of interest is, however, "one factor among several in determining whether the plan administrator abused its discretion in denying benefits."[29] Although "such a conflict is a red flag that may trigger a somewhat more searching review of a plan administrator's decision, the arbitrary and capricious standard remains in place."[30]

In this case it is undisputed that Regions denied Plaintiffs' claims for benefits on appeal and pays the plan benefits "out of its own pocket." By the same token, Regions's use of a third-party administrator like BCBS "lowered the risk of a biased decision."[31] Plaintiffs have cited no evidence

---

[26] *Id.* at 367.

[27] The Court notes that the plan documents in the record before the Court do not refer to the right of a plan participant or beneficiary to appeal the denial of benefits to Regions. The record shows that Mr. Morrison was advised by Stephanie Hays, Regions's health and welfare benefits manager, of his right to an appeal to the Regions Benefits Committee, even though the source of this right is not clear. Admin. R. D-0000783 (D.E. # 54).

[28] *Cox,* 585 F.3d at 299 (citation omitted).

[29] *Id.*

[30] *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 311-12 (6th Cir. 2010) (citing *Glenn*, 554 U.S. at 115); *see also Hunter v. Life Ins. Co. of N. Am.*, 437 F. App'x 372, 376 (6th Cir. 2011).

[31] *O'Bryan v. Consol Energy, Inc.*, 477 F. App'x 306, 309 (6th Cir. 2012).

of actual bias on the part of Regions. The Court concludes then that Regions's inherent conflict constitutes one factor for the Court to weigh in determining whether Regions acted arbitrarily and capriciously in denying Plaintiff's claim on appeal.

## CONCLUSIONS OF LAW

The Court holds that Defendants' denial of benefits in this case was not arbitrary and capricious. Although Defendants reasonably determined that Remuda Ranch was not a "hospital," Defendants failed to go on to consider whether Remuda Ranch qualified as a "psychiatric specialty hospital" under the terms of the plan. Even assuming Remuda Ranch was a "psychiatric specialty hospital," the plan excluded benefits for treatment received at a nonparticipating, out-of-network psychiatric speciality hospital. Substantial evidence in the administrative record shows that Remuda Ranch was a nonparticipating, out-of-network provider. Therefore, BCBS's decision to deny benefits and Regions' decision on appeal will be affirmed. Plaintiffs' Motion for Judgment on the Administrative Record is denied, and Defendants' Cross-Motion for Judgment on the Administrative Record is granted.

### I. Defendants' Actions During the Administrative Process

The Court begins by stating that Defendants' denial of coverage in this case was in large part not "the result of a deliberate, principled reasoning process . . . supported by substantial evidence."[32] The record shows that Plaintiffs (and their authorized representatives at Remuda Ranch) aggressively pursued a claim for benefits from the day that Ms. Morrison was admitted to Remuda Ranch and filed three different administrative appeals, challenging BCBS's denial of benefits. Throughout this administrative process, BCBS proffered different reasons at different times for its denial of Ms.

---

[32] *Senzarin*, 361 F. App'x at 640.

17

Morrison's claim: Remuda Ranch was a residential treatment facility; Plaintiffs had failed to obtain preadmission certification; and Remuda Ranch was a nonparticipating, out-of-network provider. BCBS consistently cited its determination that Remuda Ranch was a residential treatment facility (and not a "hospital" as defined in the plan) as its primary reason for denying coverage. Plaintiffs responded by submitting substantial evidence to challenge BCBS's conclusion. Through this evidence Plaintiffs demonstrated that Remuda Ranch operated two separate locations, one licensed as residential treatment center and the other licensed as an inpatient "level 1 psychiatric acute behavioral health facility" providing inpatient care. Plaintiffs further showed that the Remuda Ranch center where Ms. Morrison received inpatient treatment was not licensed as a residential treatment center and arguably met the plan definition of a "psychiatric specialty hospital."

The quality of Defendants' responses to this evidence left a great deal to be desired. On Plaintiffs' initial appeal, BCBS responded with a form letter, which contained an apparent typographical error and merely stated without elaboration that "this treatment/procedure is not covered by your contract." BCBS did not indicate why Ms. Morrison's treatment was not covered, much less address all of the evidence presented by Dr. Wandler in the appeal tending to show that Ms. Morrison received inpatient care at a licensed inpatient facility. On Plaintiffs' second administrative appeal (the "voluntary appeal"), BCBS apparently misplaced the appeal paperwork, forcing Plaintiffs to submit the appeal a second time two months later. BCBS eventually responded to the resubmitted appeal with a conclusory explanation that "there are no appeal options for Health Management regarding" the determination that there were no benefits available. Even when Mr. Morrison appealed the matter to Regions, the Benefits Administrative Committee's determination that Ms. Morrison's treatment occurred at a licensed residential treatment center, and not at a

"hospital," seemed to fly in the face of substantial evidence to the contrary. Regions failed to address Remuda Ranch's contention that its inpatient center and the license it held from the state of Arizona might qualify that facility as a "psychiatric specialty hospital." Based on Defendants' repeated failures to articulate the reasons for its determination or address the quality and quantity of evidence submitted by Plaintiffs challenging Defendants' determination, the Court finds "an absence of reasoning in the record to support" Defendants' conclusion that the Remuda Ranch's inpatient center where Ms. Morrison received inpatient care was a residential treatment center.[33]

## II. Defendants's Explanations for the Denial of Benefits

Even though the Court finds fault in Defendants' handling of the administrative claims process, "the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious."[34] Like a conflict of interest, a plan administrator's "cavalier treatment" of the participant's claim for benefits is but one factor that might weigh in favor of finding the plan administrator's denial of benefits to be arbitrary and capricious.[35] The Court must still uphold Defendants' decision as long as "it is possible to offer a reasoned explanation, based on the evidence for a particular outcome."[36] The administrative record shows that Defendants proffered essentially

---

[33] *Kovach*, 587 F.3d at 334.

[34] *Wooden v. Alcoa, Inc.*, No. 12-3190, 2013 WL 141777, at *7 (6th Cir. Jan. 11, 2013) (quoting *Spangler v. Lockheed Martin Energy Sys., Inc.,* 313 F.3d 356, 362 (6th Cir. 2002)).

[35] *Wooden*, 2013 WL 141777, at *7.

[36] *Cox*, 585 F.3d at 299.

three justifications for their denial of Plaintiffs' claim for benefits.[37]  The Court turns now to consider the merits of Defendants' reasoned explanations for the denial of benefits.

**A. Remuda Ranch Was Not a "Hospital"**

First, Defendants argue that Remuda Ranch does not meet the plan's definition of a "hospital."  Both Defendants relied on similar reasoning during the administrative process.  BCBS indicated on several occasions that Remuda Ranch was actually a residential treatment center.  Regions concurred with this determination when it found on appeal that Remuda Ranch was "licensed as a residential treatment center and not as a hospital." Glaub's letter setting forth Regions' decision on appeal further concluded that Plaintiffs had not proven that Remuda Ranch "is licensed as a hospital."[38]

The Sixth Circuit has held that "where the plan gives the administrator discretion to interpret its terms, the administrator's interpretation must be upheld unless it is arbitrary and capricious or unreasonable."[39]  In this case the Court holds that Defendants reasonably concluded that Remuda Ranch was not a "hospital," as the plan defines the term.  The plan defines a "hospital" as "any institution that is classified by us as a 'general' hospital using, as we deem applicable generally available sources of information."  The plan does not define "general hospital" but obviously gives BCBS discretion in applying the term.  BCBS had a duty then to exercise its discretion to interpret

---

[37] *Kovach*, 587 F.3d at 332 ("[A] plan administrator cannot support its argument on appeal with a fact not relied upon in its initial coverage determination.").

[38] Glaub even cited his own personal research, which was "not provided to the Committee," showing that Remuda Ranch "is not a hospital."  This extraneous evidence is not part of the administrative record, and so the Court cannot consider it here.

[39] *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433-34 (6th Cir. 1998) (citation and internal quotation marks omitted).

"general hospital" "in accordance with its plain meaning as it would be understood by an ordinary person."[40] A "general hospital" is commonly understood to mean "a hospital in which patients with many different types of ailments are given care."[41] It is undisputed in this case that Ms. Morrison received treatment at Remuda Ranch Centers for Anorexia and Bulimia, Inc., a specialized institution providing treatment for eating disorders.[42] Defendants' determination that a specialized facility like Remuda Ranch was not a "general hospital" was reasonable and consistent with the common meaning of the term. Therefore, Defendants' conclusion that Remuda Ranch was not a "hospital" under the terms of the plan was not arbitrary and capricious.

Nevertheless, the issue for the Court to decide in this case is whether Defendants' decision to deny benefits was arbitrary and capricious. Even though it was reasonable to find that Remuda Ranch did not meet the plan definition of a "hospital," the plan provides benefits for mental health treatment provided at facilities other than "hospitals." Specifically, the plan covers treatment at a "psychiatric specialty hospital," which the plan defines as "an institution that is classified as a psychiatric specialty facility by such relevant credentialing organizations as [BCBS] or any Blue Cross and/or Blue Shield plan (or its affiliates) determines." The definition speaks for itself; an institution or facility need not meet the plan's definition of a "hospital" so long as it "is classified

_____

[40] *Hernandez v. Hartford Life & Acc. Ins. Co.*, 462 F. App'x 583, 585 (6th Cir. 2012) (citation omitted).

[41] Merriam-Webster's Third Int'l Dictionary (Unabridged) 945 (2002 ed.).

[42] The Court adds that during Remuda Ranch's initial call to BCBS on September 19, 2008, Helen stated that Remuda Ranch's inpatient center was "the transfer unit with our local general hospital." Admin. R. D-0000071 (D.E. # 15). Helen went over this information as part of a disclaimer, which included information about Remuda Ranch's license. Helen indicated that Remuda Ranch's standard procedure was to "state" its license during such calls.

as a psychiatric specialty facility" by a "relevant credentialing organization." In other words, a facility like Remuda Ranch might meet the plan's definition of a "psychiatric speciality hospital" based on the type of credentials the facility holds from an accrediting organization even if the facility is not a "hospital" as the plan defines the term.

Here Defendants cite no evidence from the administrative record, let alone "substantial evidence," that they engaged in a reasoned process to determine whether Remuda Ranch was a "psychiatric specialty hospital," as Plaintiffs asserted throughout the administrative proceedings. Rather Defendants simply concluded that Remuda Ranch did not constitute a "hospital" under the terms of the plan and was instead a "residential treatment facility." Defendants cite no evidence to support their determination that the facility in question was only a "residential treatment facility," a term which is undefined in the plan. Perhaps more importantly, Defendants never addressed the substantial evidence Plaintiffs provided which tended to show that Ms. Morrison was treated at Remuda Ranch's inpatient center, a facility which is licensed by the state of Arizona as a "level 1 psychiatric acute behavioral health facility" and not as a residential treatment center. Defendants never explained to Plaintiffs or Remuda Ranch why this evidence did not suffice to prove that Remuda Ranch's inpatient center did not constitute a "psychiatric specialty hospital" under the terms of the plan. To the extent then that BCBS and Regions denied benefits based solely on their conclusion that Remuda Ranch was not a "residential treatment facility" and not a "hospital," the Court finds "an absence of reasoning in the record to support" such a determination.[43] Therefore, the Court holds that Defendants' first rationale does not constitute a reasoned explanation for their denial of benefits.

---

[43] *Kovach*, 587 F.3d at 334.

**B. Plaintiffs' Failure to Obtain Preadmission Certification**

Defendants argue in the alternative that benefits were correctly denied because of Plaintiffs' failure to obtain preadmission certification for Ms. Morrison's hospitalization. It is undisputed that the terms of the plan required preadmission certification in order to receive benefits for any hospitalization. The plan explains that the purpose of preadmission certification is "to determine whether a member requires treatment as a hospital inpatient prior to a member's admission . . . based upon medically recognized criteria." According to the plan, BCBS's certification of an admission "only means that [BCBS] approved the medical necessity of the admission." It is further undisputed that BCBS did not certify Ms. Morrison's admission to Remuda Ranch and that Remuda Ranch understood that BCBS was not certifying Ms. Morrison's admission to the facility when she first arrived for treatment.

While substantial evidence shows that Plaintiffs did not obtain certification for Ms. Morrison's admission to Remuda Ranch, Plaintiffs have put BCBS's denial of the certification itself at issue.[44] The question on judicial review then is not whether Plaintiffs had Ms. Morrison's admission certified (they did not) but whether Defendants acted reasonably in denying certification. On this point the Court finds a lack of substantial evidence to support BCBS's decision to deny certification. BCBS did not give any reason for its denial when Remuda Ranch sought preadmission certification on September 19, 2008, much less explain that it was not certifying the admission for lack of medical necessity. BCBS simply stated that it could not certify the admission and that Ms.

---

[44] Compl. ¶ 16 ("On the day of Ms. Morrison's admission (September 19, 2008), Remuda Ranch requested certification from BCBSAL for Ms. Morrison's admission/hospital stay. At that time, BCBSAL verbally (and incorrectly) informed Remuda Ranch that Remuda Ranch was a 'residential facility,' and that benefits were only available for 'inpatient' treatment.").

Morrison had no benefits for treatment at Remuda Ranch. In fact, BCBS's denial was almost instantaneous. Nurse Grier returned the telephone call to Remuda Ranch only two minutes after receiving a voicemail message inquiring about preadmission certification for Ms. Morrison's treatment. As such, it is not clear from the record what facts BCBS considered or why BCBS decided to deny preadmission certification.

On appeal Defendants cited no medical reasoning to explain why BCBS had cause to deny certification for Ms. Morrison's treatment. In their briefing for the Court, Defendants argue that BCBS "appropriately informed Remuda Ranch that it was not a covered facility on September 19, 2008," because Remuda Ranch did not meet the plan's definition of a "hospital."[45] Throughout the administrative claims process, Defendants took the position that Remuda Ranch was a "residential treatment facility." However, as discussed above, Defendants' finding that Remuda Ranch was not a "hospital" is not conclusive as to whether Defendants acted reasonably in denying Plaintiffs' claim for benefits. Defendants have failed to show that they engaged in a reasoned process to determine whether Remuda Ranch was a "psychiatric specialty hospital," as Plaintiffs asserted during the administrative claims process. Furthermore, the Court finds that Defendants' proffered reasons do not address medical necessity, though perhaps they do go to the question of whether Ms. Morrison needed "treatment as a hospital inpatient." In any event, BCBS admits that its denial was not based on whether Ms. Morrison required "treatment as a hospital inpatient" but rather on BCBS's determination that Remuda Ranch was not a "hospital."[46] Defendants concede in their brief that they

---

[45] Defs.' Cross-Mot. for J. on Admin. Record 15.

[46] The Court also finds Defendants' argument to be somewhat circular. Defendants maintain that the plan provides no benefits because Plaintiffs failed to obtain preadmission certification for Ms. Morrison's "treatment as a hospital inpatient." At the same time,

"never reviewed Ms. Morrison's condition or her medical information to determine whether any such treatment was medically necessary."[47]

The Court concludes then that Plaintiffs' failure to obtain preadmission certification for Ms. Morrison's treatment at Remuda Ranch is not fatal to Plaintiffs' claim for benefits. Plaintiffs challenged the denial of preadmission certification in the administrative process and continued to put the denial of certification at issue in their judicial appeal. Defendants have failed to cite substantial evidence to justify BCBS's denial of certification for lack of medical necessity. Therefore, the Court holds that Defendants' second rationale does not constitute a reasoned explanation for Defendants' denial of benefits.

## C. Remuda Ranch Was a Nonparticipating, Out-of-Network Provider

Defendants have raised one other basis for denying Plaintiffs' claim for benefits, namely, that Remuda Ranch was a nonparticipating, out-of-network provider. BCBS issued Plaintiffs two processed claims reports in December 2008, informing Plaintiffs no benefits were available because Ms. Morrison's treatment was provided by "a nonparticipating, out-of-network provider." According to Defendants, "[i]t is undisputed that Remuda Ranch does not participate with nor is

---

Defendants assert that Ms. Morrison was not treated at a "hospital." If Ms. Morrison did not receive "treatment as a hospital inpatient," the plan arguably did not require preadmission certification. As Plaintiffs argue in their brief, this approach would allow a plan administrator to deny certification erroneously and then subsequently raise the claimant's failure to obtain certification as grounds for denying benefits. This outcome strikes the Court as incongruent with one of the primary purposes of ERISA, which is "to increase the likelihood that participants and beneficiaries under single-employer defined benefit pension plans will receive their full benefits." 29 U.S.C.A. § 1001b(c)(3).

[47] Defs.' Cross-Mot. for J. on Admin. Record 18-19 (arguing that in the event the Court granted Plaintiffs' judgment on the administrative record, the Court should remand for further consideration of the claim).

considered a member of any Blue Cross and/or Blue Shield plan."[48]  While the plan covers treatment at "out-of-network" psychiatric specialty hospitals, the plan excludes treatment at psychiatric specialty hospitals if the providers do "not participate with nor are considered members of any Blue Cross and/or Blue Shield plan."  Plaintiffs respond that the plan is ambiguous on this point because the plan does not clearly distinguish between "out-of-network" providers and providers "that do not participate with nor are considered members of any Blue Cross and/or Blue Shield Plan."[49]  In other words, a reasonable reader could conclude that an "out-of-network" provider is actually a provider that does "not participate with nor are considered members of any Blue Cross and/or Blue Shield plan."  Plaintiffs argue that the Court should resolve this ambiguity against Defendants and construe the plan in favor of maximum coverage.

Before reaching the reasonableness of Defendants' determination that Remuda Ranch was a "nonparticipating, out-of-network provider," the Court first addresses Plaintiffs' argument about resolving ambiguities in the terms of the plan.  Plaintiffs contend that the Court should construe the term "participate" against Defendants and in favor of coverage under the principle of contract construction known as *contra proferentem*.  However, Plaintiffs have cited no authority for the proposition that the Court should apply federal common law rules of ERISA contract interpretation such as *contra proferentem* as part of an arbitrary and capricious review.  In fact, the Sixth Circuit has expressed concern that "invoking the rule of *contra proferentem* undermines the arbitrary and

---

[48] *Id.* at 17.

[49] Pl.'s Resp. in Opp'n 17 (D.E. # 77).  Plaintiffs make the separate argument that the processed claim reports did "not affirmatively state that benefits [were] denied."  *Id.* at 3.  The Court finds this argument to be unconvincing.  The reports stated that Plaintiffs' use of "a nonparticipating, out-of-network facility . . . increases your out of pocket responsibility."  The reports further stated that none of Plaintiffs's charges were covered.

capricious standard of review" in ERISA cases.[50] All of the authority cited by Plaintiffs on this point

is inapposite. Some cases simply stand for the proposition that federal common law principles of

ERISA contract construction apply when the Court reviews a denial of benefits under the *de novo*

standard of review.[51] Others concern contract claims governed by ERISA, and not a plan

administrator's denial of benefits to a plan participant.[52] What is more, it is well-settled that under

the arbitrary and capricious standard, the Court must uphold the plan administrator's interpretation

---

[50] *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 81-82 (6th Cir. 2009) (collecting cases from other circuits holding "that the rule of *contra proferentem* does not apply where a plan bestows interpretative authority on its administrator"); *Mitchell v. Dialysis Clinic, Inc.*, 18 F. App'x 349, 353 (6th Cir. 2001) (questioning whether the rule of *contra proferentum* should apply in ERISA cases when the standard of review is arbitrary and capricious); *accord Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) ("Courts should proceed carefully before applying rules developed specifically to ferret out arbitrary and capricious action when interpreting the terms of a plan *de novo*.") (quotation omitted)).

[51] *Bruch*, 489 U.S. at 112-13 (explaining that trust law's *de novo* standard of review and general contract principles of construction applied to denial of benefits claims prior to the enactment of ERISA); *Rehab. Inst., Inc. v. Mich. United Food & Commercial Workers Health & Welfare Funds*, 178 F. App'x 449, 452 (6th Cir. 2006) (*en banc*) (applying federal common law rules of contract interpretation as part of *de novo* review of denial of ERISA benefits); *Simpson v. Mead Corp.*, 187 F. App'x 481, 483 (6th Cir. 2006) (applying *de novo* standard of review to coverage dispute under an ERISA "top hat" plan); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (applying federal common law rules of contract interpretation to decide proper standard of review in ERISA denial of benefits).

[52] *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 692 (6th Cir. 2006) (applying federal common law rules of contract interpretation to resolve an ERISA priority coverage dispute); *Univ. Hosps. of Cleveland v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006) (applying federal common law rules of contract interpretation where provider alleged breach of contract against ERISA plan administrator); *Regents of Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 338 (6th Cir. 1997) (applying federal common law rules of contract interpretation to construe a coordination of benefits clause in an ERISA plan).

of a plan provision so long as it is reasonable.[53]  Therefore, the Court's inquiry is whether

Defendants' interpretation of the undefined term "participating" was reasonable, and not whether

the term was ambiguous and should be construed against Defendants under federal common law

rules of ERISA contract interpretation.

Having established the correct analysis, the Court holds that even if Remuda Ranch met the

plan definition of a "psychiatric specialty hospital," it was reasonable for Defendants to determine

that Remuda Ranch did "not participate with" and was not "considered [a] member[] of any Blue

Cross and/or Blue Shield plan."[54]  As such, it was not arbitrary and capricious for Defendants to deny

Plaintiffs' claim for benefits.  Plaintiffs correctly note that the plan does not define what it means

to "participate with . . . any Blue Cross and/or Blue Shield plan" or otherwise define the term

"participating" provider.[55]  On judicial review, Defendants have not explained what the term actually

means or how BCBS interpreted it.  For their part Plaintiffs have not suggested a reasonable

definition of the phrase or shown that under their proposed definition, Remuda Ranch was a

"participating" provider.  BCBS's duty during the administrative process was to interpret the word

---

[53] *E.g. Ciaramitaro v. Unum Life Ins. Co. of Am.*, 12-1859, 2013 WL 1339076, at *3 (6th Cir. Apr. 4, 2013); *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund,* 632 F.3d 288, 297 (6th Cir. 2011); *Morgan v. SKF USA, Inc.*, 385 F.3d  989, 992 (6th Cir. 2004); *Wendy's Int'l, Inc. v. Karsko,* 94 F.3d 1010, 1012 (6th Cir. 1996).

[54] The exclusion's use of the phrase "considered members of any" plan is ambiguous. The plan actually defines "member" to mean "a subscriber or eligible dependent who has coverage under the plan."  It is clear that the exclusion is not referring to a subscriber or eligible dependent but a provider of medical services, specifically a psychiatric specialty hospital.

[55] *Cf. Brigolin*, 2013 WL 781639, at *2-3 (finding that a BCBS plan defined "participating provider" as "a hospital, physician, and other licensed facility or health care professional who has signed a participation agreement with BCBS of Michigan agreeing to accept approved charges as payment in full" and noting that Remuda Ranch was a nonparticipating provider under the terms of the Michigan plan).

"participate" "in accordance with its plain meaning as it would be understood by an ordinary person."[56] In this context, "participate" is commonly defined to mean "take part in something [as an enterprise or activity] in common with others."[57] Other plan terms reasonably suggest that to "take part in" a Blue Cross or Blue Shield plan was to contract with a Blue Cross or Blue Shield plan to provide specific types of care for a negotiated price.[58] A "nonparticipating" provider then is reasonably understood as a provider who has no contract with a Blue Cross or Blue Shield plan.

Whatever the precise meaning of the term is under the plan, substantial evidence in the administrative record supports BCBS's determination that Remuda Ranch was a nonparticipating, out-of-network provider. The plan defines an "out-of-network provider" as "a provider who is not an in-network provider."[59] The plan considers a provider to be an "an in-network provider only if the local Blue Cross and/or Blue Shield plan designates the provider as a BlueCard PPO provider for the service or supply being furnished."[60] During one of Remuda Ranch's initial calls to BCBS

_____

[56] *Hernandez*, 462 F. App'x at 585.

[57] Merriam-Webster's Third Int'l Dictionary (Unabridged) 1646 (2002 ed.).

[58] The plan's distinction between "in-network" and "out-of-network" is not based solely on whether a provider has a contract with BCBS. For example, the plan specifies that "a provider is considered to be an in-network provider if, and only to the extent that, the provider is furnishing a service or supply that is specified as an in-network benefit under the terms of the contract between the provider and the Blue Cross and/or Blue Shield plan (or its affiliates)." Other terms suggest that a provider may be an "out-of-network provider" under the terms of the plan, even when the provider has a contract with a local plan. For instance, The plan states that "a provider that has a contractual relationship with a Blue Cross and/or Blue Shield plan but is not designated by the local Blue Cross and/or Blue Shield plan as a BlueCard PPO provider" is paid "at the out-of-network level of benefits." Admin. R. D-0000047 (D.E. # 15).

[59] Admin. R. D-0000048 (D.E. # 15).

[60] The plan defines "BlueCard PPO" as a "national network of providers" designated by a local Blue Cross and/or Blue Shield plan as "PPO providers." Admin. R. D-0000005 (D.E. # 15).

on September 19, 2008, Norma Schuler indicated to a BCBS customer service representative that Remuda Ranch was not a PPO with the local Blue Cross or Blue Shield plan. The transcript of the call shows that BCBS asked Schuler whether Remuda Ranch was "PPO with your local plan" to which Schuler answered "nope."[61] At the conclusion of that conversation, BCBS informed Schuler that it could not certify Ms. Morrison's admission. This evidence alone establishes that Remuda Ranch was an "out-of-network provider."

Following Ms. Morrison's treatment at Remuda Ranch, BCBS's processed claim reports, issued December 19, 2008 and December 23, 2008, respectively, stated that no benefits were available because Ms. Morrison received treatment from a "nonparticipating, out-of-network facility." Plaintiffs authorized Remuda Ranch to appeal the denial. In his March 9, 2009 appeal letter, Dr. Wandler conceded that Remuda Ranch was in fact a "nonparticipating, out-of-network provider."[62] Based on this substantial evidence, it was not unreasonable for Defendants to find that even if Remuda Ranch was a "psychiatric specialty hospital," Remuda Ranch did "not participate

---

Elsewhere the plan describes the "BlueCard Program" as "[a]n arrangement among Blue Cross Plans by which a member of one Blue Cross Plan receives benefits available through another Blue Cross Plan located in the area where services occur." Admin. R. D-0000046 (D.E. # 15).

[61] Admin. R. D-0000075 (D.E. # 15).

[62] Dr. Wandler did not contest the notion that Remuda Ranch was a "nonparticipating" provider. Dr. Wandler simply stated that BCBS had previously quoted mental health benefits for inpatient treatment at nonparticipating, out-of-network facilities. The administrative record calls Dr. Wandler's statement into doubt. During a September 19, 2008 call, Helen from Remuda Ranch specifically inquired about "mental health benefits for inpatient all levels for out-of-network." Admin. R. D-0000067 (D.E. # 15). BCBS responded that the plan included benefits for mental health treatment provided by out-of-network providers. Helen never indicated whether Remuda Ranch was a "participating" provider, and BCBS never addressed the exclusion for treatment at nonparticipating psychiatric specialty hospitals. More importantly, BCBS never certified benefits for treatment at Remuda Ranch during the call. Dr. Wandler's claim then is not supported in the evidence.

with" and was not "considered [a] member[] of any Blue Cross and/or Blue Shield plan." Therefore, it was not arbitrary and capricious for Defendants to deny Plaintiff's claim for benefits.

Plaintiffs raise an final argument on this point. Plaintiffs contend that the two processed claim reports stating that Remuda Ranch was a nonparticipating, out-of-network provider did not properly give Plaintiffs notice of the grounds for BCBS's denial of benefits. The reports do not cite any section of the plan or explain what constitutes a "nonparticipating, out-of-network" facility. According to Plaintiffs, this failure was a violation of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. The Court considers Plaintiffs' notice argument as to these reports and other communications addressed by Defendants to Plaintiffs more fully below.

## III. The Adequacy of Defendants' Notice

Based on the quality of Defendants' communications to Plaintiffs about the denial of benefits, Plaintiffs have argued that Defendants failed to comply with the notice requirements of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g)(1). Specifically, Plaintiffs contend that the processed claim reports of December 2008; the BCBS letter of April 2, 2009 containing a typographical error; and BCBS's August 17, 2009 response letter to Plaintiffs' voluntary appeal failed to provide notice of the reasons for the denial. Defendants respond that Plaintiffs did not plead such a claim in their judicial complaint, and even if they had, Defendants substantially complied with § 2560.503-1(g)(1).

The Sixth Circuit has held that "administrators need only substantially comply with these ERISA notice requirements [under § 2560.503-1(g)(1)] in order to avoid remand" for further consideration of the claim.[63] The Court's task is to consider "all communications between an administrator and plan participant to determine whether the information provided was sufficient

_____

[63] *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005).

under the circumstances."[64]  Plan administrators must give a claimant notice of the reasons for the denial of a claim and afford the claimant a "fair opportunity for review."[65]  A failure to give proper notice will result in remand to the plan administrator unless remand would "represent a useless formality."[66]  The Sixth Circuit has held that "remand represents a useless formality if the plan administrator provides at least one reasonable basis for the denial of benefits, even if two different and independent reasons are given for the denial."[67]

The Court need not decide whether Defendants substantially complied with ERISA's notice requirements.  The Court holds that even if they did not substantially comply, remand for further consideration of Plaintiffs' claim would represent a useless formality.  The record establishes at least one reasonable basis for the denial of benefits, namely, the fact that Remuda Ranch's inpatient center was a nonparticipating, out-of-network psychiatric specialty hospital.  Even though the Court has noted defects in the other reasons Defendants gave for denying Plaintiffs' claim, remand would serve no useful purpose.  Therefore, Plaintiffs' Motion is denied as to this request for relief.

## CONCLUSION

The Court holds that Defendants' denial of benefits in this case was not arbitrary and capricious.  Plaintiffs' Motion for Judgment on the Administrative Record is **DENIED**, and

---

[64] *Smith v. Health Servs. of Coshocton*, 314 F. App'x 848, 856-57 (6th Cir. 2009) (citation omitted).

[65] *Moore*, 458 F.3d at 436 (citation omitted).

[66] *McCartha*, 419 F.3d at 444.

[67] *Smith*, 314 F. App'x at 857 (citing *McCartha*, 419 F.3d at 446-47).

Defendants' Cross-Motion for Judgment on the Administrative Record is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 23, 2013.